UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DJ DIRECT, INC.,<br><br>        Plaintiff,<br><br>v.<br><br>OMM IMPORTS, INC. d/b/a ZERO GRAVITY, BREYA'S COSMETIC CORP. and DAVID ZUR,<br><br>        Defendant. | Civil Action No.<br><br>ECF CASE<br><br>COMPLAINT AND JURY DEMAND |

Plaintiff, DJ Direct, Inc. ("Plaintiff" or "DJ Direct") by and through its undersigned attorneys, STERN & SCHURIN LLP, as and for its Complaint against Defendants, OMM Imports, Inc. d/b/a Zero Gravity ("OMM"), Breya's Cosmetic Corp. ("Breya") and David Zur ("Zur")(collectively "Defendants"), alleges as follows:

## NATURE OF ACTION

1. DJ Direct operates a successful online store located on the Amazon.com platform. DJ Direct sells various types of authentic goods at the lowest possible prices to consumers who prefer to shop online. One of the goods that DJ Direct advertised and sold on its online store was the PERFECTIO® branded anti-aging aesthetic medical device.

2. DJ Direct brings this action against Defendants for disparagement, tortious interference with business relations, defamation, unfair competition, and for declaratory relief, all resulting from an objectively baseless scheme to knowingly make false statements and complaints against DJ Direct to Amazon.com concerning the authenticity and alleged "counterfeit" nature of the PERFECTIO® products sold by DJ Direct.

3. Defendants executed the scheme described herein for no legitimate purpose, with the knowledge that the goods being sold by DJ Direct were not counterfeit and knowing that its actions would harm DJ Direct.

4. As described herein, Defendants intent and desire was to prevent DJ Direct from competing with them on price. Defendants were not pursuing any justifiable legal remedy when they made false claims that the products being sold by DJ Direct were "counterfeit" or "infringing."

5. Upon information and belief, Defendants have a reputation for filing false complaints of "counterfeiting" in order to prevent and thwart the legitimate sale of products online by entities and individuals that they do not control.

6. This record is reflected in numerous complaints filed with the Better Business Bureau in Miami Beach, Florida where Defendants are located. Attached hereto as **Exhibit 1** are representative examples of such complaints.

7. As shown in Exhibit 1, in numerous instances consumers trying to re-sell authentic PERFECTIO® products online that they purchased from authorized sellers or even Defendants themselves were prevented from doing so by false claims from Defendants to the online platforms that the products were "counterfeit." In response to such complaints, Defendants sometimes even admitted that they knew their claim that the goods offered for sale were counterfeit was false, and that they made such false complaints so as to enforce their "policy" of prohibiting the re-sale of their goods online.

8. The false statements and complaints described herein made by Defendants against DJ Direct were a sham and were made for the express purpose of disrupting and damaging DJ Direct's business, and so as to improperly and illegally try to maintain control of the price of

PERFECTIO® products advertised and sold to consumers online.

9. In this case, the Defendants knew that the PERFECTIO® products being advertised for sale by DJ Direct were authentic and not counterfeit. Nevertheless, they still made and publicized such false claims to Amazon.com, which substantially damaged DJ Direct.

10. Indeed, Defendants' improper actions resulted in the complete shutdown of DJ Direct's entire online store on Amazon.com causing DJ Direct to suffer over a million dollars in damages, and harming DJ Direct's business reputation with Amazon.com and DJ Direct's current and prospective customers.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 with respect to the claims arising under the Lanham Act, 15 U.S.C. § 1051, *et seq.*, and pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq*.

12. This Court also has diversity jurisdiction over this dispute under 28 U.S.C. §1332(a) since the matter in controversy exceeds $75,000 and the dispute is between a citizen of the State of New York and citizens of another state.

13. This Court also has supplemental jurisdiction over DJ Direct's state and common law claims pursuant to 28 U.S.C. § 1367, as these other claims are so related to the claims in the action which form the basis for the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution and derive from a common nucleus of operative fact.

14. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims in this Complaint occurred in this District.

## THE PARTIES

15. DJ Direct is a corporation organized and existing under the laws of the State of New York, with a place of business located at 1242 47th Street, Brooklyn, N.Y. 11219.

16. Upon information and belief, Defendant OMM is a Florida corporation, having a principal place of business located at 1945 S. Ocean Drive, Hallandale, Florida 33009.

17. Upon information and belief, OMM is in the business of advertising, marketing, promoting, developing, offering for sale, and selling purported anti-aging and facial products to consumers in the aesthetic devices market under the trademark PERFECTIO®.

18. OMM is the owner of record of U.S. Trademark Registration No. 4913382 for the mark PERFECTIO®.

19. Upon information and belief, although OMM is based in Florida it does a substantial amount of business in the State of New York and in this judicial district.

20. Upon information and belief, OMM advertises, markets, promotes, sells and offers for sale the PERFECTIO® products at issue in this lawsuit in the State of New York and in this judicial district.

21. Upon information and belief, Defendant Breya is a Florida corporation, having a principal place of business located at 1820 NE 163rd St., Miami, Florida 33162.

22. Upon information and belief, at all relevant times Breya was an "authorized distributor" of OMM's PERFECTIO®.

23. Upon information and belief, although Breya is based in Florida it does a substantial amount of business in the State of New York and in this judicial district.

24. Upon information and belief, Breya advertises, markets, promotes, sells and offers for sale the PERFECTIO® aesthetic devices at issue in this lawsuit in the State of New York and

in this judicial district.

25. Upon information and belief, Defendant David Zur resides at 1820 NE 163rd St, North Miami Beach, Florida 33162.

26. Upon information and belief, Zur is the owner and President of Breya.

27. Zur exercises control over Breya and is the moving, conscious, active force behind Breya's unlawful conduct.

28. Upon information and belief, Zur makes and/or is integrally involved in all important decisions involving Breya, including without limitation decisions involving the advertising, marketing, offers for sale, and sales relating to the devices advertised and sold by Breya under the mark PERFECTIO® which are in competition with those advertised and sold by DJ Direct.

29. Upon information and belief, Zur also personally made false statements to Amazon.com at issue herein and is personally responsible for several of the acts complained of herein.

30. Upon information and belief, there exists, and all times herein mentioned there existed, a unity of interests between and among Defendants Breya and Zur vis-à-vis the ownership, operation, and/or management of the business of Breya.

31. Upon information and belief, Breya is dominated and controlled by Zur such that Defendants Breya and Zur may considered interchangeable with one another.

32. Since Defendants regularly transact business in the State of New York and within this judicial district, jurisdiction in the Eastern District of New York is appropriate for the adjudication of the claims brought herein.

**DJ DIRECTS'S LAWFUL ADVERTISING AND SALE OF PERFECTIO® PRODUCTS**

33. Over the past several years, DJ Direct had built a very successful business by advertising, marketing, promoting, offering for sale, and selling many different types of authentic and genuine products on its own online store located on the online retail website, Amazon.com.

34. DJ Direct advertises, offers for sale and sells authentic consumer products at discount prices, One of the authentic and genuine consumer products that DJ Direct advertised, offered for sale and sold in its online shop were PERFECTIO® aesthetic anti-aging devices. These products were advertised and sold in original packaging and were purchased directly from suppliers of genuine PERFECTIO® products.

35. At all times material hereto, all of the PERFECTIO® branded products advertised in DJ Direct's online store were brand new and were legally purchased from authorized distributors. The products were authentic and genuine products that were being legally advertised and offered for sale at discount prices to consumers on DJ Direct's Amazon.com online store.

**DEFENDANTS' WRONGFUL ACTIVITIES**

36. OMM advertises and sells its PERFECTIO® brand products directly to consumers on its website located at www.zerogravityskin.com. OMM also sells these same products on a wholesale basis to other distributers and sellers, who then advertise, market, promote and sell these products to others. Upon information and belief, one of those distributors who is permitted by OMM to sell online is Defendant Breya.

37. In the Spring 2018, DJ Direct purchased numerous units of new PERFECTIO® products from distributers who had purchased the products directly from OMM or OMM's authorized distributors on a wholesale basis.

38. Through its own online store located on Amazon.com, DJ Direct then advertised and offered these products directly to consumers at discount prices.

39. Upon information and belief, Defendants became aware of DJ Direct's advertising and sale of authentic PERFECTIO® products and were concerned that DJ Direct was selling this product at a lower price than they were offering to sell the very same product.

40. Upon information and belief, to address the issue, Defendants jointly decided to execute a sham operation involving the filing of false claims with Amazon.com, alleging that the PERFECTIO® products being advertised and sold by DJ were "counterfeit" and/or "infringing."

41. Defendants intent was to remove the DJ Direct lower priced authentic offerings from the online marketplace, and to otherwise harm DJ Direct for advertising and selling goods to consumers at a low price.

42. None of the Defendants had any legitimate reason to believe that the products being advertised and sold by DJ Direct were counterfeit.

43. And, none of the Defendants bothered to purchase a product from DJ Direct to determine whether they were authentic or to contact DJ Direct before making their false claims to Amazon.com.

44. Nevertheless, on June 8, 2018, Defendant Zur, with the authorization, knowledge and consent of Breya and OMM, and acting on behalf of Breya and/or OMM as the purported "rights holder" and registrant of the PERFECTIO® trademark, filed a false complaint with Amazon.com, alleging that PERFECTIO® branded products being advertised and offered for sale in DJ Direct's online store were "counterfeit."

45. Upon information and belief, none of the Defendants had any basis to believe that the goods being advertised for sale by DJ Direct were counterfeit.

7

46. In addition, Defendants never threatened Amazon.com directly for selling allegedly "counterfeit" goods, and never threatened to take any action against Amazon.com if it did not take down the goods. Accordingly, Defendants were not petitioning Amazon to take any particular action.

47. Defendants notice to Amazon.com was also not a cease and desist letter to Amazon.com, rather it was part of Defendants' effort to make false claim to Amazon.com so as to prevent DJ Direct from advertising and selling genuine goods and to cause other harm to DJ Direct.

48. None of the allegations set forth in Defendants' June 8, 2018 complaint to Amazon.com were true since DJ Direct had not advertised, offered for sale or sold any counterfeit PERFECTIO® products.

49. To the contrary, the PERFECTIO® products which were advertised, offered for sale and sold by DJ Direct on its online Amazon store were 100% genuine and authentic and did not infringe OMM's purported trademark and/or trade dress rights.

50. Upon information and belief, Zur, with the authorization, knowledge and consent of Breya and OMM, lodged this false complaint with Amazon.com, counting on the fact that Amazon.com would not conduct any investigation to verify the claim and would remove DJ Direct's listing for the PERFECTIO® products it was advertising and offering for sale. Defendants each also knew that Amazon.com would also potentially deactivate DJ Direct's entire online store, thus shutting down DJ Direct's business.

51. As Defendants intended, upon receipt of the June 8, 2018 complaint, the Seller Performance Team at Amazon promptly sent DJ Direct a "Policy Warning Notice" advising DJ Direct that Amazon had "received a report from a rights holder that claims that the items at the

end of this email infringe their trademark" and Amazon.com then removed DJ Direct's listing. *See* Amazon Policy Warning, attached as **Exhibit 2**.

52. On June 12, 2018, Zur, with the authorization, knowledge and consent of Breya and OMM, then filed a second complaint with Amazon.com again alleging that PERFECTIO® branded products being advertised and offered for sale in DJ's online store were "counterfeit."

53. The Defendants had no legitimate reason to believe that the products being advertised and sold by DJ Direct were counterfeit, and none of the allegations set forth in the June 12, 2018 complaint were true since DJ Direct has not advertised, offered for sale or sold any counterfeit PERFECTIO® products.

54. To the contrary, the PERFECTIO® products advertised, offered for sale and sold by DJ Direct on its online Amazon.com store were 100% genuine and authentic and did not infringe OMM's purported trademark and/or trade dress rights.

55. Upon information and belief, Zur, with the authorization, knowledge and consent of Breya and OMM, lodged the second false complaint with Amazon.com, counting on the fact that Amazon.com would not conduct any investigation to verify the claim and would remove DJ Direct's listing for the PERFECTIO® products it was advertising and offering for sale. Defendants each also knew that Amazon.com would also potentially deactivate DJ Direct's entire online store, thus shutting down DJ Direct's business.

56. As Defendants intended, upon receipt of the second complaint, the Seller Performance Team at Amazon promptly sent DJ Direct another "Policy Warning Notice" advising that Amazon.com had "received a report from a rights holder that you are listing counterfeit products," and temporarily removed DJ Direct's listing of such product. *See* Amazon Policy Warning attached as **Exhibit 3**.

9

57. Then, not satisfied with the fact that Amazon.com had not taken DJ Direct's online store down entirely, on June 22, 2018, June 23, 2018 and again on June 26, 2018, Zur, with the authorization, knowledge and consent of Breya and OMM, filed a third, fourth and fifth complaint with Amazon.com falsely alleging that PERFECTIO® branded products being advertised and offered for sale in DJ Direct's online store were "infringing."

58. Once again none of the Defendants had any reasonable basis to believe that the goods being advertised and offered for sale by DJ Direct were infringing, and none of the allegations set forth in the complaints were true since DJ Direct had not advertised, offered for sale or sold any counterfeit PERFECTIO® products.

59. To the contrary, the PERFECTIO® products which were advertised, offered for sale and sold by DJ Direct on its online Amazon store were 100% genuine and authentic and did not infringe OMM's purported trademark and/or trade dress rights.

60. As intended by Defendants, upon receipt of these additional complaints, the Seller Performance Team at Amazon sent DJ additional "Policy Warning Notices" advising that Amazon had "received a report from a rights holder that you are listing counterfeit products," and removed DJ's listing of such product. *See* Amazon Policy Warnings attached as **Exhibit 4**. And, in this instance, and as Defendants intended to happen, based on the history of Defendants' false complaints, on July 13, 2018 Amazon.com sent DJ Direct a "warning letter" advising that within seven (7) days it may suspend and take down DJ Direct's entire online store. Attached hereto as **Exhibit 5** is Amazon.com's warning letter.

61. In response to this warning letter, DJ Direct frantically responded to Amazon.com. However, DJ Direct was ultimately unable to avoid the further action threatened by Amazon.com

62. On July 23, 2018, Amazon.com suspended DJ Direct's entire online store, shutting down DJ Direct's business.

63. Finally, after being shut down for a total of seven (7) days from July 23, 2018 until July 30, 2018, Amazon.com finally reinstated DJ Direct's online store.

64. During this time, not only did DJ Direct lose 100% of its revenue income from the shutdown of its online store causing DJ Direct to lose over a million dollars of sales, but DJ Direct also lost the goodwill and analytical data stored by Amazon.com and essentially had to rebuild its online store from scratch.

65. If the false complaints with Amazon.com had not been filed, DJ Direct would have continued to earn an increased revenue stream and flow of business resulting from the sale of products on its online store.

66. DJ Direct was further harmed because Defendants' false complaints established a record of complaints, which Amazon.com takes into account when considering future complaints raised by customers and others.

67. DJ Direct seeks monetary relief from the Court for the harm it suffered as a result of Defendants' improper and illegal activities, including the harm it suffered from its store being completely shut down for seven (7) days, and for the additional harm which it continues to suffer as a result of the knowingly false, malicious and disparaging statements and misrepresentations made by Defendants to Amazon.com about the nature of the products it advertised, offered for sale and sold.

## COUNT I
## PRODUCT DISPARAGEMENT UNDER NEW YORK COMMON LAW

68. DJ Direct repeats and realleges the allegations set forth above in paragraphs 1 through 67 as though fully set forth herein.

69. DJ Direct advertised, offered for sale and sold genuine and authentic PERFECTIO® products on its online store located on the retail website Amazon.com.

70. By virtue of the statements made by Defendants to Amazon.com falsely asserting that the products being sold by DJ Direct were "counterfeit" and/or "infringing," Defendants have made statements that are materially false and misrepresent the quality, condition, and value of DJ Direct's products.

71. In asserting that the products advertised, offered for sale and sold by DJ Direct were "counterfeit" and/or "infringing" Defendants have declared that these products are of lesser quality and poorer condition than other products available on the market to consumers.

72. By the same token, in contending that the products advertised, offered for sale and sold by DJ Direct were "counterfeit" and/or "infringing," Defendants have suggested to Amazon.com that the condition and value of the products sold by DJ Direct are inferior to those very same items purchased elsewhere when they are, in fact, not.

73. Defendants' materially false statements and misrepresentations about DJ Direct's products were made intentionally and in reckless disregard for the truth and were known to be false or unsubstantiated at the time that such statements were made.

74. As a result of Defendants' materially false statements and misrepresentations about DJ Direct's products to Amazon.com, DJ Direct has suffered pecuniary damages, including the loss of sales on the Amazon.com platform during the time the store was shut down, and from retail customers on Amazon.com who would have otherwise purchased from DJ Direct in the future had the store not been shut down.

75. As a proximate result of Defendants' wrongful acts, DJ Direct has been irreparably harmed and is entitled to injunctive relief and damages in an amount to be

determined at trial.

## COUNT II
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
## UNDER NEW YORK COMMON LAW

76. DJ Direct repeats and realleges the allegations set forth above in paragraphs 1 through 75 as though fully set forth herein.

77. At all relevant times herein, DJ Direct had a valid agreement and business relationship with Amazon.com which permitted DJ Direct to use the platform that Amazon.com provides to operate its online store and sell authentic goods to consumers.

78. At all relevant times herein, Defendants were aware of DJ Direct's agreement and business relationship with Amazon.com.

79. Pursuant to its agreement with Amazon.com, DJ Direct advertised, offered for sale and sold genuine and authentic PERFECTIO® products on its store located on the retail website Amazon.com.

80. In addition to its business relationship with Amazon.com, at all relevant times herein, DJ Direct had successful business relationships with existing retail customers that purchased products from DJ Direct on Amazon.com.

81. At all relevant times herein, Defendants were aware of DJ Direct's relationships with DJ Direct's existing customers.

82. Defendants' false reports of counterfeiting to Amazon.com were made for a wrongful purpose and Defendants used a dishonest, unfair and improper means to disrupt and interfere with DJ Direct's business relationships.

83. Defendants had no justification for their actions.

84. Absent the filing of the false and disparaging reports of "counterfeiting" and

13

"infringement," Defendants knew that DJ Direct would continue to advertise and sell products on its online store on Amazon.com to retail consumers in search of such products.

85. As a result of Defendants' dishonest, unfair, and improper acts of interference with DJ Direct's business relationship with Amazon.com, Amazon.com removed DJ Direct's listing and then removed DJ Direct's entire online store from its popular platform.

86. As a further result of Defendants' dishonest, unfair and improper acts of interference with DJ Direct's relationships with current and prospective purchasers, said purchasers were unable to purchase DJ Direct's products.

87. The harm caused to DJ Direct and its business was Defendants' intended result.

88. Moreover, by virtue of Defendants' dishonest, unfair, and improper acts of interference DJ Direct's business relationship with Amazon.com has been stained and blemished since there is now a record of claims of "counterfeiting" and "infringement" with Amazon.com asserted against DJ Direct. These false claims asserted against DJ Direct will be kept by Amazon.com for years to come, tarnishing DJ Direct's relationship with Amazon.com and causing substantial monetary damage to DJ Direct.

89. DJ Direct's relationship with its current and prospective customers has also been irreparably harmed by Defendants' dishonest, unfair and improper acts since they were unable to purchase products from DJ Direct during the time the store was shut down, and they know or may discover that DJ Direct's online store was removed from Amazon.com due to allegations that DJ Direct was selling counterfeits or infringing products and therefore may choose not to purchase products from DJ Direct in the future.

90. As a result of Defendants' actions, DJ Direct has suffered pecuniary damages, including the loss of sales.

91. As a result of Defendants' actions, DJ Direct has also suffered injury by virtue of its loss of standing with Amazon.com and its customers, and harm to its reputation as an honest re-seller of goods.

92. As a proximate result of Defendants' wrongful acts, DJ Direct has been irreparably harmed and is entitled to injunctive relief and damages for in an amount to be determined at trial.

## COUNT III
## UNFAIR COMPETITION UNDER NEW YORK COMMON LAW

93. DJ Direct repeats and realleges the allegations set forth above in paragraphs 1 through 92 as though fully set forth herein.

94. Defendants' unlawful activities as set forth herein constitute unfair competition as proscribed by New York common law.

95. Defendants' acts of unfair competition have caused DJ Direct to sustain pecuniary damage, loss, and injury.

96. Upon information and belief, Defendants have engaged and continue to engage in these activities knowingly and willfully.

97. Defendants' acts of unfair competition, unless enjoined by this Court, will continue to cause DJ Direct to sustain irreparable damage, loss, and injury.

98. DJ Direct has no adequate remedy at law.

99. DJ Direct, as a proximate result of Defendants' materially deceptive activities, has been irreparably harmed and is entitled to injunctive relief and damages in an amount to be determined at trial.

## COUNT IV
## DEFAMATION UNDER NEW YORK COMMON LAW

100. DJ Direct repeats and realleges the allegations set forth above in paragraphs 1 through 99 as though fully set forth herein.

101. Defendants' written publication of material that libels DJ Direct, namely its false written claims of "counterfeiting" and "infringement," constitute defamation.

102. Defendants' statements about DJ Direct were demonstrably false.

103. Defendants knew or should have known that those statements about DJ Direct were false when they published those statements.

104. Those statements were defamatory because they accused DJ Direct of engaging in illegal and/or unethical behavior in conducting their business.

105. As a direct and proximate result of Defendants' publication of those false statements, DJ Direct has sustained damages, including but not limited to lost sales, lost profits, loss of goodwill, lost business opportunities, lost customers, and damage to DJ Direct's reputation.

106. DJ Direct, as a proximate result of Defendants' defamatory statements, has been irreparably harmed and is entitled to injunctive relief and damages in an amount to be determined at trial.

## COUNT VI
## DECLARATION OF INVALIDITY, UNENFORCEABILITY AND/OR NON-INFRINGEMENT UNDER THE LANHAM ACT AGAINST DEFENDANT OMM

107. DJ Direct repeats and realleges the allegations set forth above in paragraphs 1 through 106 as though fully set forth herein.

108. An actual controversy has arisen and now exists between DJ Direct and

Defendant OMM concerning whether DJ has infringed OMM's trademark rights.

109. DJ Direct has advertised, marketed, offered for sale, and sold products alleged by OMM to be counterfeit and/or infringing and which, according to OMM, infringe OMM's trademark rights.

110. Upon information and belief, OMM still believes and maintains that DJ Direct's activities with respect to its advertising, marketing, offer for sale, and sale of the PERFECTIO® products constitute counterfeiting and infringement of OMM's trademark rights.

111. In contrast, DJ Direct believes and alleges that its products, advertisements, and marketing and promotional materials do not infringe upon any valid trademark rights of OMM, and that that it has not committed any acts of counterfeiting under the Lanham Act.

112. By virtue of the foregoing, DJ Direct desires a judicial determination of the parties' rights and duties with respect to the trademark and/or trade dress rights asserted by OMM.

113. A judicial declaration is necessary and appropriate at this time so that the parties may proceed in accordance with their respective rights as determined by the Court so that DJ Direct's customers are convinced that DJ Direct did not sell counterfeit PERFECTO® goods, and so that OMM never again files a false statement that DJ Direct's products are counterfeit or infringing.

## **PRAYER FOR RELIEF**

**WHEREFORE**, DJ Direct prays for judgment against Defendants as follows:

A. For judgment declaring that Defendant OMM's trademark rights are not infringed by DJ Direct;

B. For judgment holding Defendants liable for product disparagement, tortious

interference with business relations, unfair competition, defamation, and other wrongful activities in connection with Defendants' action as described herein;

C. For judgment enjoining preliminarily and permanently Defendants, their agents, servants, related companies, and all parties in privity with them, or any of them, from committing any further acts that constitute product disparagement, tortious interference with business relations, and unfair competition, and other wrongful activities;

D. For judgment requiring Defendants to pay Plaintiff such damages as Plaintiff has sustained as a consequence of Defendants' product disparagement, tortious interference with business relations, unfair competition, defamation, and other wrongful activities complained of herein, and to account for all gains, profits, and advantages derived by Defendants from said product disparagement, tortious interference with business relations, and unfair competition, and other wrongful activities complained of herein. At this time, such amount is believed to be more than $1,000,000;

E. For judgment requiring OMM to issue corrective advertising to Amazon.com and to retail consumers stating that the PERFECTIO® products advertised and sold by DJ Direct are neither counterfeit nor infringing.

F. Awarding Plaintiff costs, expenses, and reasonable attorney's fees as permitted by law; and

G. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

                                              **STERN & SCHURIN LLP**

By: _____
Steven Stern (SS 5203)
   sstern@sternschurin.com
Richard Schurin (RS 0199)
   rschurin@sternschurin.com
*Attorneys for Plaintiff*
*DJ Direct, Inc.*
595 Stewart Avenue
Suite 510
Garden City, New York 11530
Telephone: (516) 248-0300
Facsimile: (516) 283-0277

Dated: April 30, 2019
       Garden City, New York